STATE of Missouri, Respondent,

v.

Anthony Michael DIXON, Appellant.

No. WD 32699.

Missouri Court of Appeals, Western District.

Dec. 29, 1981.

---

Jack A. Lewis, North Kansas City, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Jefferson City, for respondent.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

KENNEDY, Presiding Judge.

Defendant appeals from a jury conviction for stealing a motor vehicle. Punishment was assessed at five years and six months imprisonment. In his appeal, defendant presents one assignment of error, alleging that the trial court improperly denied his motion to suppress in-court identification testimony.

We find defendant's charge to be without merit and the judgment is affirmed.

The evidence shows that shortly after 11:00 p. m. on July 15, 1980, two black males armed with revolvers entered the Pizza Hut restaurant in Liberty, Missouri, and ordered the three employees on duty to lie on the floor. No customers were present. The employees subsequently identified defendant at a pre-trial show-up and at trial as one of the men.

After taking money from the cash register and the safe, plus appropriating the wallets of the supervisor and the cook, the robbers forced the waitress to leave with them in the supervisor's car. Several minutes later, the waitress ran back inside the restaurant, where she and her male coworkers telephoned the police. Before they could finish the call, the robbers reentered the establishment, again brandishing their weapons in the employees' faces. The supervisor's car had stalled, so the pair demanded the keys to the cook's car and forced him to accompany them to the parking lot where they left in his car without the cook.

Officers responding to the robbery call pursued the vehicle until defendant, who was driving, lost control and crashed into a bridge. The men were seen running from the car into a heavily wooded area which quickly became the scene of an intensive search involving 30 to 40 law enforcement officers, dogs, and a helicopter.

Shortly after 1:00 a. m., officers investigating a report of a hitchhiker south of the crash scene discovered the defendant who matched the description given by the employees, of one of the suspects. Defendant's hair was matted with dirt and leaves and he had a cut on his cheek. A search of defendant's person incident to his arrest produced the cook's wallet.

Defendant was taken to the Liberty police station where the three employees were giving statements to the police. Officer Sam Scott interrupted them to announce that the police thought they had one of the suspects and that he wanted them "to take a look at this gentleman." When viewed by the witnesses, who were not separated prior to the viewing, defendant was seated at a table in an adjoining room with a white patrolman in uniform standing behind him. Upon viewing defendant through a one-way mirror, each witness identified him as one of the robbers. No subsequent lineup was held.

Defendant contends that the three-on-one pre-trial confrontation was unduly suggestive because the only other person in the room with defendant when he was viewed by the witnesses was a white officer in uniform, so that the witnesses were not permitted to view other persons with characteristics similar to defendant's. As a result, it is urged, the in-court identification of defendant was tainted so as to result in a deprivation of due process, and should have been suppressed.

Appellant's claim is closely akin to that rejected by this court in *State v. May*, 613 S.W.2d 877 (Mo.App.1981), wherein a witness likewise viewed a suspect within an hour or two of the robbery, with the suspect alone in the presence of a white police officer. The confrontations in *May* and the instant case are analogous to the police allowing a witness to see a suspect in custody at the scene of the crime or at the scene of arrest—a procedure consistently approved by our courts. *Id.* at 880 [1]; *State v. Johnson*, 618 S.W.2d 443, 445 [1] (Mo.App. 1981); *State v. Ralls*, 583 S.W.2d 289, 291 (Mo.App.1979).

■ The procedure used here would not invalidate the identification unless the witnesses made the identification in response to suggestions or encouragement by the police, rather than on their own observation and recollection of defendant's appearance. *State v. Ralls*, supra at 291. The record fails to show impermissible suggestions; rather, Officer Scott simply told the

witnesses that the police thought they had one of the suspects and requested them to view him. Where as here the officer does not declare that the man in custody is indeed the robber but merely states that the police have a suspect who matches the description of the robber or that the witness might be able to identify, the ensuing show-up is not rendered impermissibly suggestive. *State v. Carter*, 571 S.W.2d 779, 782 (Mo.App.1978); *State v. Dickerson*, 568 S.W.2d 559, 561 (Mo.App.1978). Concomitantly, it was not improper for the police to fail to separate the witnesses prior to their viewing the defendant. *State v. Carter*, supra at 782.

The cases have noted the desirability of ascertaining as quickly as possible whether the person apprehended is in fact the offender, so that the police may know whether to hold the person in custody or release him and continue the investigation. *State v. Hamblin*, 448 S.W.2d 603, 608 (Mo.1970); *State v. Carter*, supra at 781; *State v. French*, 528 S.W.2d 170, 173 [6] (Mo.App. 1975). That policy is well illustrated by the present factual setting, i.e., the robbers were known to be armed, had threatened the witnesses with guns, were likely to be desperate in their attempts to flee the area, and the police were still engaged in a heated search of the area where the pair fled the stolen car. While the identification procedure used here might be improper in other situations, under the foregoing circumstances there existed "a real need to determine immediately whether the person apprehended was in fact the person sought", *Simms v. State*, 568 S.W.2d 801, 803 (Mo.App.1978), so that the police could direct the manhunt accordingly. Additionally, the shortness of the time lapse between the robbery and the confrontation (roughly two hours) may be said to actually enhance the reliability of the identification. *State v. Hamblin*, supra at 608.

■ Questions of pre-trial identification aside, the in-court identification is admissible if it is inherently reliable and of an origin independent of the pre-trial procedure. *State v. Higgins*, 592 S.W.2d 151, 160

[13] (Mo. banc 1979), *appeal dismissed,* 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980); *State v. Hawkins,* 608 S.W.2d 496, 497 [3] (Mo.App.1980), *vacated and remanded,* 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981), *aff'd on remand,* 619 S.W.2d 64 (Mo. banc 1981). The factors to be examined in determining reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *State v. Charles,* 612 S.W.2d 778, 780 [2] (Mo. banc 1981); also *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Examining the totality of the circumstances, as is the requirement, it is seen that the identification of appellant bears every indication of reliability.

■ That the witnesses had ample opportunity to view defendant at the time of the crime is shown by evidence that defendant and his companion entered the restaurant and paused at a point four to five feet from the supervisor, directly approached the supervisor and announced the robbery, forced the waitress to leave with them in the abortive getaway attempt, reentered the restaurant and again threatened the witnesses, and had the cook follow them to the parking lot before leaving in his car. A high degree of attentiveness may be inferred from the self-same facts.

The descriptions given by the witnesses were sufficiently accurate to enable the police to recognize defendant as fitting one of those descriptions and to apprehend him. *State v. Simmons,* 559 S.W.2d 557, 561 [16] (Mo.App.1977); *State v. Armbruster,* 541 S.W.2d 357, 360 (Mo.App.1976). The evidence further shows that all the witnesses were very positive in their identification of defendant at the confrontation. Finally, the confrontation occurred approximately two hours after the robbery, when the witnesses' memories would have been vivid. *State v. May,* supra at 880.

Under the standards by which reliability is adjudged and under the totality of the circumstances, the in-court identification of defendant was inherently reliable and of an origin independent of the pre-trial procedure. See, e.g., *State v. May,* supra at 880; *State v. Carter,* supra at 782. The testimony was properly admitted into evidence.

The judgment is affirmed.

All concur.